UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. RANSOM, | ) | Case No. 3:08-CV-00602 |
| | ) | |
| Petitioner, | ) | Judge Sara Lioi |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| ERNIE MOORE, WARDEN, | ) | (resolving ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Michael A. Ransom was convicted in the Van Wert County Court of Common Pleas on February 16, 2006, on one count of attempted murder, and one count of improperly discharging a firearm at or into a habitation, with a firearm specification. (Docket #8, Exhibit 9). Mr. Ransom appealed his conviction to the Ohio Third District Court of Appeals and his conviction was affirmed on December 11, 2006. (Docket #8, Exhibit 13). On appeal, Mr. Ransom argued that the following errors: (1) the trial court erroneously admitted evidence of a prior conviction; (2) the trial court erroneously denied his motion to suppress statements made during a non-Mirandized custodial interrogation; (3) the conviction was against the manifest weight of the evidence; and (4) the trial court erroneously sentenced him to the maximum sentence to be served consecutively. *Id*. Mr. Ransom then sought leave to appeal his conviction to the Ohio Supreme Court, challenging the appellate court's decision related to his second and fourth assigned errors. *Id*. The Supreme Court of Ohio denied leave on May 2, 2007, "as not involving any substantial constitutional question.". (Docket #8, Exhibit 16).

Mr. Ransom filed the instant petition on March 10, 2008, under 28 U.S.C. §2254, and presents two grounds for relief::

> **Ground for Relief No. 1**: Statements given while a defendant is in police custody may not be used against the defendant if the defendant was not informed of Miranda rights prior to questioning. (Docket #1 at 5).
>
> **Ground for Relief No. 2**: An appellant is denied the effective assistance of appellate counsel when appellate counsel fails to challenge the trial court's imposition of maximum, consecutive sentences in violation of Due Process and Ex Post Facto Clauses of the United States Constitution. (Docket #1 at 6).

Respondent answered opposing the petition, and Mr. Ransom filed a traverse. Mr. Ransom has waived his prior acts and manifest weight of the evidence arguments on federal habeas corpus.

## I. *FACTUAL BACKGROUND*

The facts that formed the basis of the Mr. Ransom's conviction were set forth in *State v. Ransom*, 2006 WL 3544739, at ¶¶2-7 ("State Court Decision").

> Defendant-Appellant, Michael Ransom appeals a judgment of the Van Wert County Common Pleas Court finding him guilty of attempting to cause the unlawful termination of another's pregnancy (attempted murder), in violation of R.C. § 2923.02(A), 2903.02(A), with a firearm specification, of discharging a firearm into an occupied structure, in violation of R.C. § 2923.161(A)(1), with a firearm specification, and sentencing him to twenty-one years in prison. Ransom asserts that the trial court improperly allowed evidence of his prior conviction of murder; that his statement to the police should be suppressed because of the failure to give Miranda warnings; that his conviction is contrary to the manifest weight of the evidence; and that the trial court improperly sentenced him to maximum, consecutive sentences. Finding that there was sufficient evidence to convict the appellant, that the trial court properly allowed the evidence of his prior conviction as well as his statement to the police, and that the sentences were properly imposed, we affirm the judgment of the trial court.
>
> In the evening hours of May 22, 2005, Ransom was driven by his girlfriend, Mary Miller, from Lima, Ohio to Van Wert, Ohio supposedly to "take care of a drug problem." She let him out of the car in a part of Van Wert that she was unfamiliar with. Miller testified that Ransom had a gun hidden in a football in his possession. She picked him up, less than five minutes later, and Ransom, being in a highly

excited state, told her “it's done, let's go.” The next day, Ransom disposed of the gun and Miller disposed of the extra bullets.

During that same time frame, Stephanie Ehman, who was pregnant with Ransom's child, was laying on the couch in her home in Van Wert, together with her son, watching television. She heard something break her window, and called 9-1-1. Upon investigation, a Van Wert Police officer recovered a bullet from the couch upon which she and her son had been at the time of the shooting.

During the subsequent investigation, Warren Upshaw, a friend Ransom's told the Van Wert Police that in February or March 2005, Ransom told him that he had gotten a white girl in Van Wert pregnant, that he wanted to get rid of the baby, and asked Upshaw if he could use one of his cars or his guns. Upshaw refused. Upshaw also told them that on May 31, 2005, Ransom admitted that he had shot the girl in the stomach, but that the baby did not die.

Thereafter, Ransom was indicted on three counts. Count I was for the attempted murder of Stephanie Ehman, a felony of the first degree; count II was for the attempted unlawful termination of her pregnancy, a felony of the first degree; and count III was for improperly discharging a firearm into a habitation, a felony of the second degree. Each count included a firearm specification. Ransom pled not guilty and was tried by a jury.

After deliberation, the jury found Ransom guilty of the attempted unlawful termination of Ehman's pregnancy and the firearm specification, and the improper discharge of a firearm in to a habitation and the firearm specification. The jury found him not guilty of the attempted murder of Ehman.

Following the verdict, Ransom was sentenced to ten years on the charge of attempting to unlawfully terminate Ehman's pregnancy, eight years on the charge of improperly discharging a firearm into a habitation, and three years on the firearm specification, with all of the sentences to run consecutively, for a total sentenced of twenty-one years in prison.

## II. *LAW AND ANALYSIS*

For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2), which extends the permissible range of federal review of state convictions follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

A district court has very restricted Congressionally-granted powers for review under 28 U.S.C. §2254(d). See *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000)*; Bell v. Cone*, 535 U.S. 685 (2002). The habeas applicant must show either that the state decision was "contrary to" or an "unreasonable application" of Supreme Court precedent. The phrases "contrary to" and "unreasonable application" are not the same. Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Williams*, 529 U.S. at 405-06; *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003). Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ. *Id.* The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta*, of the U.S. Supreme Court at the time of the relevant state court decision. *Lockyer*, 538 U.S. at 71-72; *Williams*, 529 U.S. at 412; *Bell*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). This includes both the

state court's refusal to extend and/or its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts. See *Williams*, 529 U.S. at 407. The unreasonable application of Supreme Court precedent must, however, be "objectively" unreasonable. *Id.* at 409; *Wiggins*, 539 U.S. at 520-21. When the state court has rendered a decision, the federal reviewing court may not grant the writ in its "independent review of the legal question." *Lockyer*, 538 U.S. at 75. When there has been an "unreasonable application" of clearly established federal law, then no deference is due to the state decision and the federal court is free to resolve the claim independently.

1. Grounds For Relief No. 1.

Mr. Ransom argues that the state court's denial of his motion to suppress statements made to police on May 24, 2005, was contrary to, or an unreasonable application of, clearly established law set forth in *Miranda v. Arizona*, 384 U.S. 436, 441-91 (1966). Respondent states that, Mr. "Ransom gave two statements to the police: one statement on May 24, 2005, without an advisement of "Miranda" rights, when he was not a suspect, and a second statement on June 9,2005, with an advisement of "Miranda" rights, when he was a suspect." (Docket #8 at 8). Mr. "Ransom was not in custody at the time of his May 24, 2005 statement and [Mr.] Ransom did not tell anything to the police that was inconsistent with [his] testimony at trial or that was not obvious from other sources." *Id*.

The following supporting facts are undisputed: [1] (1) Mr. Ransom voluntarily came to the Van Wert Police Department to answer questions at the request of police; (2) Mr. Ransom was initially questioned by Officer Bruns in an interview room of the basement and the interview was videotaped; (3) Officer Freeman joined the interview at some point; (4) at the conclusion of the interview, Officer Bruns walked Mr. Ransom to the parking lot to look at his truck; and (5) Mr. Ransom then left the police station.

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." *Withrow v. Williams*, 507 U.S. 680, 688 (1993), *quoting U.S. Const. Amend. V.* The Fifth Amendment's Self-Incrimination Clause is incorporated in the Due Process Clause of the Fourteenth Amendment, and thus applies to the States. *Dickerson v. United States*, 530 U.S. 428, 434 (2000), *citing Malloy v. Hogan*, 378 U.S. 1, 6-11 (1964)); *Withrow*, 507 U.S. at 688-689.

Accordingly, only voluntary statements may be admitted into evidence. *See Dickerson*, 530 U.S. at 433. To determine whether a statement is voluntary, a court examines "whether a suspect's will was overborne by the circumstances surrounding the confession." *Greeno v. Bradshaw*, 2007 WL 78958, at *8 (N.D. Ohio 2007). This test considers "the totality of the circumstances, the characteristics of the accused, and the details of the interrogation." *Id.*, *citing Dickerson*, 530 U.S. at 434; *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Whether a statement is voluntary "is

---

[1] In his traverse, Mr. Ransom argues that "it is questionable whether or not [he] 'voluntarily' came to the police station, that he "was considered the 'prime suspect' in the case, and the only person questioned, upon which [sic] a Gun Powder Test for residue was performed." (Docket #9 at 3). These facts were not argued to the Third District Court of Appeals, nor were any arguments related to these facts set forth in Mr. Ransom's motion to suppress. More importantly, these additional facts were not established in the transcripts of the suppression hearing.

a legal question requiring independent federal determination." *Greeno*, *supra*, *citing Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). In *Miranda*, the Supreme Court set forth "concrete constitutional guidelines" to govern the admissibility of a criminal suspect's statements given during a custodial interrogation. *Dickerson*, 530 U.S. at 432. "*Miranda* and its progeny *** govern the admissibility of statements made during custodial interrogation in both state and federal courts." *Id.*

"[C]ustodial interrogation" has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Yarborough v. Alvarado*, 541 U.S. 652, 661(2004), *quoting Miranda*, 384 U.S. at 444); *Thompson v. Keohane*, 516 U.S. 99, 107 (1995). Police are only obliged to give *Miranda* warnings if a person is "in custody." *Yarborough*, 541 U.S. at 661; *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). To determine if a person is "in custody," a court must consider: "'the circumstances surrounding the interrogation; and *** given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.'" *Yarborough*, 541 U.S. at 663, *quoting Thompson*, 516 U.S. at 112.

"In the habeas context, the determination of whether a person is 'in custody,' and therefore entitled to Miranda warnings, is a mixed question of law and fact." *Greeno, supra*, *citing Thompson*, 516 U.S. at 102. "The first inquiry, as to the circumstances surrounding the interrogation, is a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(d)." *Id.*, *citing Thompson* at 112. "The second inquiry, however, calls for the application of the controlling legal standard, and therefore is subject to independent habeas review." *Id.*

Ultimately, the court must determine whether the petitioner was formally arrested or whether his freedom of movement was restrained to a degree associated with a formal arrest. *Yarborough*,

541 U.S. at 662, *quoting California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam); *Stansbury*, 511 U.S. at 322. "The relevant inquiry is how a reasonable person in the suspect's position would have understood his situation." *Greeno*, *supra*, *citing Yarborough*, 541 U.S. at 662; *Stansbury*, 511 U.S. at 324, *quoting Miranda*, 384 U.S. at 442. In so applying the custody test, however, state courts have some leeway to reach different outcomes on a case-specific basis. *Yarborough*, 541 U.S. at 664. "Habeas relief is available under Section 2254(d)(1) only if the state court's decision is objectively unreasonable." *Id*. at 665.

Here, the state appellate court considered whether the trial court erred in denying Mr. Ransom's motion to suppress statements made during a May 24, 2005 interrogation. Mr. Ransom argues that, "under the totality of the circumstances, a reasonable person would have believed he was not free to leave, and was in custody during the interview." (State Court Decision at ¶18). Respondent argued that because Mr. Ransom was not in custody and was free to leave on May 24, 2005, police were not required to give *Miranda* warnings. (Docket #8, Exhibit 4).

Based on its review of the undisputed facts set forth above, the state court stated that "only a 'custodial interrogation triggers the need for a *Miranda* rights warning' *** [and] [a]fter examining the evidence under the totality of the circumstances, we are not persuaded that the interview conducted at the Van Wert Police Department on May 24,2005, was custodial in nature." (State Court Decision at ¶¶20, 22, *citing State v. Mason*, 82 Ohio St.3d 144, 153 (1998)). The state court went on to note that Mr. Ransom was not arrested prior to or after the interview, there was never an intent to arrest him, and Mr. Ransom did not believe himself to be arrested." (State Court Decision at ¶22). "[A] reasonable person would not have understood himself to be under arrest

under these circumstances." *Id.* The State Court Decision considered both prongs of the custody test reciting the proper standards under *Miranda* and related Ohio cases.

This court has independently examined the relevant portions of the trial transcript during which the videotape of Mr. Ransom's statement was played for the jury. The evidence supports the state court's determination of the circumstances of the interrogation. The circumstances further support a determination that a reasonable person would not have felt that he or she was not at liberty to leave. *See Yarborough*, 541 U.S. at 663. It is undisputed that Mr. Ransom voluntarily came to the police station to be questioned, which facts weighs against a determination that a reasonable person would not have felt free to leave. *Martin v. U.S.*, 2008 WL 1767081 (N.D. Ohio 2008)(considering defendant's voluntary presence at a police interview as evidence that the interview was not a custodial interrogation), *citing Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)(considering petitioner's voluntary presence at the police station, the short length of the interview (1.5 hours) [2] and that defendant was able to "leave the police station without hindrance" as evidence that defendant "was not in custody or otherwise deprived of his freedom of action in any significant way"). The *Oregon* court further noted that the requirement of warnings is not imposed "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Oregon*, 429 U.S. at 495.

Based on the foregoing, Mr. Ransom has failed to establish that the state decision was "contrary to" or an unreasonable application of clearly established federal law

---

[2] The videotape of Mr. Ransom's interview was approximately 60 minutes in length. (Trial Tr. at 201).

2. Grounds For Relief No. 2.

Mr. Ransom argues that he was "denied the effective assistance of appellate counsel when appellate counsel fail[ed] to challenge the trial court's imposition of maximum, consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution." (Docket #1 at 7-8). Mr. Ransom was tried in 2005. In his petition, he maintains that appellate counsel failed to argue that the Ohio Supreme Court decision in *State v. Foster*, 109 Ohio St.3d 1 (2006) was unconstitutional, as applied to crimes committed before *Foster* was decided. *Id*. Respondent asserts that Mr. Ransom cannot establish that appellate counsel's performance fell below an objective standard of reasonableness. (Docket #8 at 18). Respondent maintains appellate counsel "fashioned an assignment of error within the four corners of" the *Foster* decision, thereby making a tactical decision to challenge the trial court's decision vis-a-vis the general considerations of O.R.C. §2929.11 and O.R.C. §2929.12 rather than challenging its constitutionality (*Id.* at 22-23). Further, "[b]ecause it has not been established that the decision in *Foster* is wrong, Mr. Ransom cannot support an allegation of ineffective assistance of appellate counsel" and "[a]ppellate counsel is not ineffective for failing to appeal a correct ruling of the trial court[.]" (*Id., citing Guam v. Santos*, 741 F.2d 1167 (9th Cir. 1984)).

To establish a claim of ineffective assistance of counsel, a petitioner must show: (1) that counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced the petitioner by rendering the proceeding unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test is applicable to claims of ineffective assistance of trial and appellate counsel. *See Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985). Here, Mr. Ransom cannot

establish that appellate counsel's performance was deficient. Thus, the Court need not consider whether Mr. Ransom was prejudiced.

It should be initially noted that "counsel is presumed to have rendered adequate assistance." *Johnson v. Hudson*, 2009 WL 1203400 (N.D. Ohio), *citing Strickland*, 466 U.S. at 690. "The reviewing court must not engage in hindsight but should evaluate counsel's performance within the context of the circumstances existing at the time of the alleged errors." *Id.* "The key is not whether counsel's choices were strategic but whether they were reasonable." *Id.*, *citing Roe v. Flores-Ortega*, 528 U.S. 470,481 (2000). "[C]ounsel has a duty to make reasonable investigation into possible alternatives but, having done so, will be presumed to have made a reasonable decision in choosing." *Id.*, *citing Strickland*, 466 U.S. at 691. Appellate counsel is not required to raise every possible issue on appeal to be effective. *Jones v. Barnes*, 463 U.S. 745, 752 (1983). In fact, it is important for appellate counsel to select "the most promising issues for review." *Id.* Moreover, "appellate counsel's failure to raise [a] non-meritorious claim" does not constitute ineffective assistance under *Strickland*. *Wilson v. Mitchell*, 498 F.3d 491, 514 (6th Cir. 2007), *citing Strickland* 466 U.S. at 687-88.

Ohio's Third Appellate District, as well as every other Ohio appellate district has determined "that application of the sentencing law dictated by *Foster* to acts committed prior to that decision is not an ex post facto law or due process violation under the United States or Ohio Constitutions." *State v. Crish*, 2008 WL 4455602 (Ohio App. 3 Dist.). *Accord State v. Rowles*, 2008 WL 5245563 (Ohio App. 9 Dist.); *State v. Bruce*, 170 Ohio App.3d 92 (Ohio App. 1 Dist.); *State v. Andrews*, 2007 WL 136627 (Ohio App. 12 Dist.); *State v. Coleman*, 2007 WL 293171 (Ohio App. 6 Dist.); *State v. Mallette*, 2007 WL 530187 (Ohio App. 8 Dist.); *State v. Palmer*, 2007 WL 969423 (Ohio App.

7 Dist.);*State v. Gibson*, 2006 WL 3775878 (Ohio App. 10 Dist.); *State v. Smith*, 2006 WL 2459101 (Ohio App. 2 Dist.); *State v. Paynter,* 2006 WL 3020319 (Ohio App. 5 Dist.); *State v. Grimes,* 2006 WL 3480378 (Ohio App. 4 Dist.); *State v. Elswick*, 2006 WL 3833868 (Ohio App. 11 Dist.).

Similarly, Ex Post Facto and due process challenges to *Foster* "have also been rejected by judges in this district." *Allen v. Hudson*, 2009 WL 1649312 (N.D. Ohio 2009), citing *Watkins v. Williams*, 2008 WL 2484144 (N.D. Ohio) (holding that due process is not violated by *Foster* because the new sentencing regime did not alter the fact that the defendant was aware of the maximum penalty he faced at the time he committed the crime); *Lyles v. Jeffreys*, 2008 WL 1886077 (N.D.Ohio)(finding that the re-sentencing did not violate petitioner's Due Process rights not to be re-sentenced pursuant to a law which violates the Ex Post Facto Clause, as petitioner "had fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts."); *McGhee v. Konteh*, 2008 WL 320763 (N.D. Ohio) (affirming Magistrate Judge Limbert's conclusion that "[s]ince the Foster decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, Foster does not raise an ex post facto-type due process violation).

Based on the foregoing, a constitutional challenge to the application of *Foster* to Mr. Ransom's sentence would not have been meritorious and thus, appellate counsel's failure to raise the issue on appeal does not constitute a deficient performance so as to establish the first prong of the *Strickland* test. *See Wilson*, 498 F.3d at 514, *citing Strickland* 466 U.S. at 687-88.

## III. *CONCLUSION AND RECOMMENDATION*

Following review of the arguments raised in the petition and applicable law, petitioner has not demonstrated that he was in custody pursuant to state court judgment that resulted from a

decision that involved in an "unreasonable application" of federal law as determined by the Supreme Court of the United States. See 28 U.S.C. §2254(d)(1). Further, there has been no demonstrated need for an evidentiary hearing and the petition for habeas corpus relief under 28 U.S.C. §2254 should be denied and dismissed.

/s/James S. Gallas
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 2, 2009