UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL A. RANSOM,** | ) | **CASE NO.  3:08-cv-602** |
| | ) | |
| **PETITIONER,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| **vs.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **ERNIE MOORE,** | ) | |
| **WARDEN,** | ) | |
| | ) | |
| **RESPONDENT.** | ) | |

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge James S. Gallas (Doc. No. 10). Petitioner Michael A. Ransom has filed an objection to the R&R. (Doc. No. 13.) Having reviewed *de novo* those portions of the R&R which have been properly objected to, *see* FED. R. CIV. P. 72(b)(3), for the reasons set forth below, the R&R is **ACCEPTED** and this petition is **DISMISSED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

The facts that form the basis of Ransom's conviction and present incarceration[1] are set forth in *State v. Ransom*, No. 15-06-05, 2006 Ohio 6490 (Ohio App. 3 Dist. Dec. 11, 2006):

> Defendant-Appellant, Michael Ransom appeals a judgment of the Van Wert County Common Pleas Court finding him guilty of attempting to cause the unlawful termination of another's pregnancy (attempted murder),

---

[1] Ransom was convicted of second degree murder in the State of Washington on March 25, 1985.

in violation of R.C. § 2923.02(A), 2903.02(A), with a firearm specification, of discharging a firearm into an occupied structure, in violation of R.C. § 2923.161(A)(1), with a firearm specification, and sentencing him to twenty-one years in prison. Ransom asserts that the trial court improperly allowed evidence of his prior conviction of murder; that his statement to the police should be suppressed because of the failure to give Miranda warnings; that his conviction is contrary to the manifest weight of the evidence; and that the trial court improperly sentenced him to maximum, consecutive sentences. Finding that there was sufficient evidence to convict the appellant, that the trial court properly allowed the evidence of his prior conviction as well as his statement to the police, and that the sentences were properly imposed, we affirm the judgment of the trial court.

In the evening hours of May 22, 2005, Ransom was driven by his girlfriend, Mary Miller, from Lima, Ohio to Van Wert, Ohio supposedly to "take care of a drug problem." She let him out of the car in a part of Van Wert that she was unfamiliar with. Miller testified that Ransom had a gun hidden in a football in his possession. She picked him up, less than five minutes later, and Ransom, being in a highly excited state, told her "it's done, let's go." The next day, Ransom disposed of the gun and Miller disposed of the extra bullets.

During that same time frame, Stephanie Ehman, who was pregnant with Ransom's child, was laying on the couch in her home in Van Wert, together with her son, watching television. She heard something break her window, and called 9-1-1. Upon investigation, a Van Wert Police officer recovered a bullet from the couch upon which she and her son had been at the time of the shooting.

During the subsequent investigation, Warren Upshaw, a friend Ransom's told the Van Wert Police that in February or March 2005, Ransom told him that he had gotten a white girl in Van Wert pregnant, that he wanted to get rid of the baby, and asked Upshaw if he could use one of his cars or his guns. Upshaw refused. Upshaw also told them that on May 31, 2005, Ransom admitted that he had shot the girl in the stomach, but that the baby did not die.

Thereafter, Ransom was indicted on three counts. Count I was for the attempted murder of Stephanie Ehman, a felony of the first degree; count II was for the attempted unlawful termination of her pregnancy, a felony of the first degree; and count III was for improperly discharging a firearm into a habitation, a felony of the second degree. Each count included a

2

firearm specification. Ransom pled not guilty and was tried by a jury.

After deliberation, the jury found Ransom guilty of the attempted unlawful termination of Ehman's pregnancy and the firearm specification, and the improper discharge of a firearm in to a habitation and the firearm specification. The jury found him not guilty of the attempted murder of Ehman.

Following the verdict, Ransom was sentenced to ten years on the charge of attempting to unlawfully terminate Ehman's pregnancy, eight years on the charge of improperly discharging a firearm into a habitation, and three years on the firearm specification, with all of the sentences to run consecutively, for a total sentenced of twenty-one years in prison.

*Id.*

Ransom objects only to the portion of the Magistrate Judge's R&R addressing the state appellate court's ruling regarding the trial court's denial of his motion to suppress statements made to police on May 24, 2005, and the effectiveness of his appellate counsel. Therefore, the remainder of the R&R, including the factual account set forth above, is accepted as incorporated and reproduced in the R&R.

Ransom was convicted in the Van Wert County Court of Common Pleas on February 16, 2006. He appealed to the Ohio Third District Court of Appeals, and his conviction was affirmed on December 11, 2006. *State v. Ransom*, No. 15-06-05, 2006 WL 3544739 (Ohio App. 3 Dist. Dec. 11, 2006). Ransom sought leave to appeal to the Ohio Supreme Court, which denied Ransom's application on May 2, 2007, "as not involving any substantial constitutional question." *State v. Ransom*, 113 Ohio St. 3d 1490 (Ohio 2007) (appeal not accepted for review). On March 10, 2008, Ransom filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, presenting two grounds for relief:

3

1)      Statements given while a defendant is in police custody may not be used against the defendant if the defendant was not informed of *Miranda* rights prior to questioning.

2)      An appellant is denied the effective assistance of appellate counsul (sic) when appellate counsul (sic) fails to challenge the trial court's imposition of maximum, consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution.

(Doc. No. 1 at pp. 5-6.) Respondent Warden Ernie Moore filed a return of writ on August 8, 2008. (Doc. No. 8.) Ransom filed a traverse on August 27. (Doc. No. 9.) On July 2, 2009, Magistrate Judge Gallas entered his Report and Recommendation that Ransom's petition for habeas corpus relief be denied and dismissed. (Doc. No. 10.) Ransom filed objections on September 24. (Doc. No. 13.)

## II.     STANDARD OF REVIEW

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Court provides, "[t]he judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

With respect to challenges to the determinations made by the appellate state courts in Petitioner's case, this Court has a very limited scope of review. In § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Congress enacted a rebuttable presumption that a federal court may not grant habeas relief from a state court conviction if the last state court adjudicated "on the merits" the same federal law question that is presented to the federal court. Congress further created two exceptions to that bar. Specifically, a federal court may grant habeas relief where the state court

4

adjudication is either "contrary to" or "involved an unreasonable application of" settled federal law, as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Where a ruling in state court is "on the merits," this Court must give deference to the state court. *McKenzie v. Smith*, 326 F.3d 721, 726 (6th Cir. 2003).

The Court has reviewed the Report and Recommendation, as well as the briefs and supporting material submitted by the parties, and the objections to the Report raised by Petitioner.

## III.     LAW AND ANALYSIS

### A.       **Ground One – Motion to Suppress**

The Magistrate Judge recommended that Ransom's first claim be denied because the state appellate court's decision was neither contrary to, nor an objectively unreasonable application of, *Miranda v. Arizona*, 384 U.S. 436 (1966), as required for a federal court to grant a writ of habeas corpus under 28 U.S.C. § 2254(d)(1). *See Yarborough v. Alvarado*, 541 U.S. 652, 655 (2004). Ransom objects to this determination.

In his objection, Ransom complains that "at no time was he given notice that he was not under arrest and was free to go at any time as well as he had the right not to answer any and all questions." (Doc. No. 13 at p. 2.) According to Ransom, "it is logical to assume that if a criminal defendant was not given notice [. . .] he had no choice in the matter. Either come in voluntarily or be brought in by force." (*Id*.) Therefore, Ransom concludes, "the defendant could only believe he was in custody and was entitled to be mirandized as required by law." (*Id*.) This contention is without merit because the

5

record fails to reflect that the state court's decision is contrary to or an unreasonable application of settled federal law so as to warrant federal habeas corpus relief.[2]

The Court "begin[s] by determining the relevant clearly established law." *Alvarado*, 541 U.S. at 660. The Fifth Amendment prohibits authorities from compelling any person "in any criminal case to be a witness against himself." U.S. CONST. amend. V. Consistent with the Fifth Amendment's privilege against self-incrimination, a suspect may not be subject to a custodial interrogation until after being advised of his *Miranda* rights. *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998). Custodial interrogations include "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. A suspect is in custody if, under the totality of the circumstances, a reasonable person would not have felt free to terminate the encounter and leave. *Alvarado*, 541 U.S. at 663-65.

*Alvarado* involved a post-AEDPA habeas corpus action like the one presented here and provides, as to custodial interrogations, the "governing legal principle

---

[2] In his traverse, Ransom asserts that, at the time of the May 24, 2005 interview at the police station, he "was considered the 'prime suspect' in this case," "the only person questioned," and "the only persons' [sic] of interest whose vehicle was searched immediately after being interrogated." (Doc. No. 9 at p. 4.) These assertions are not supported by the record. At trial, Officer Bruns testified that Ransom was investigated as one of two persons whose name had been provided by the victim as individuals who might have some connection to the case, and that Ransom did not become the primary suspect until after a June 9th interview with Warren Upshaw. (Doc. No. 8-9 at pp. 65, 69-70.) Officer Bruns also questioned Jason Grubb, the other person named by the victim, during the course of his investigation. (*Id.* at p. 65.) Moreover, it is not clear from the context of the interview transcript whether Ransom's truck was actually searched by the officers after the May 24 interview or merely viewed in the parking lot. In any event, Ransom consented to the "search":

> Officer Bruns:     Okay. You mind if I walk out with you, I just want to check out your
>                    truck real quick. That all right?
> Ransom:            Sure.

(*Id.* at pp. 61-62.)

6

or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 62, 71-72 (2003).[3] In *Yarborough*, the Supreme Court provided a succinct history of the "relevant clearly established law" on custodial interrogations from *Miranda* to the date of decision, which is reproduced here:

> *Miranda* itself held that preinterrogation warnings are required in the context of custodial interrogations given "the compulsion inherent in custodial surroundings." 384 U.S., at 458, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The Court explained that "custodial interrogation" meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, at 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The *Miranda* decision did not provide the Court with an opportunity to apply that test to a set of facts.
>
> After *Miranda*, the Court first applied the custody test in *Oregon v. Mathiason*, 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977) (per curiam). In *Mathiason*, a police officer contacted the suspect after a burglary victim identified him. The officer arranged to meet the suspect at a nearby police station. At the outset of the questioning, the officer stated his belief that the suspect was involved in the burglary but that he was not under arrest. During the 30-minute interview, the suspect admitted his guilt. He was then allowed to leave. The Court held that the questioning was not custodial because there was "no indication that the questioning took place in a context where [the suspect's] freedom to depart was restricted in any way." *Id.*, at 495, 50 L. Ed. 2d 714, 97 S. Ct. 711. The Court noted that the suspect had come voluntarily to the police station, that he was informed that he was not under arrest, and that he was allowed to leave at the end of the interview. *Ibid*.
>
> In *California v. Beheler*, 463 U.S. 1121, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (1983) (per curiam), the Court reached the same result in a case with facts similar to those in *Mathiason*. In *Beheler*, the state court had distinguished *Mathiason* based on what it described as differences in the totality of the circumstances. The police interviewed Beheler shortly after the crime occurred; Beheler had been drinking earlier in the day; he was emotionally distraught; he was well known to the police; and he was a parolee who knew it was necessary for him to cooperate with the police.

---

[3] *Alvarado* was decided March 1, 2004. The state appellate court issued its decision on December 11, 2006, and the Ohio Supreme Court denied Ransom's motion for leave to file an appeal on May 2, 2007.

463 U.S., at 1124-1125, 77 L. Ed. 2d. 1275, 103 S. Ct. 3517. The Court agreed that "the circumstances of each case must certainly influence" the custody determination, but reemphasized that "the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id*., at 1125, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (internal quotation marks omitted). The Court found the case indistinguishable from *Mathiason*. It noted that how much the police knew about the suspect and how much time had elapsed after the crime occurred were irrelevant to the custody inquiry. 463 U.S. at 1125, 77 L. Ed. 2d 1275, 103 S. Ct. 3517.

Our more recent cases instruct that custody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances. In *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984), a police officer stopped a suspected drunk driver and asked him some questions. Although the officer reached the decision to arrest the driver at the beginning of the traffic stop, he did not do so until the driver failed a sobriety test and acknowledged that he had been drinking beer and smoking marijuana. The Court held the traffic stop noncustodial despite the officer's intent to arrest because he had not communicated that intent to the driver. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time," the Court explained. *Id*., at 442, 82 L. Ed. 2d 317, 104 S. Ct. 3138. "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Ibid*. In a footnote, the Court cited a New York state case for the view that an objective test was preferable to a subjective test in part because it does not "'place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question.'" *Id*., at 442, n. 35, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (quoting *People v. P*., 21 N. Y. 2d 1, 9-10, 233 N.E.2d 255, 260, 286 N.Y.S.2d 225 (1967)).

*Stansbury v. California*, 511 U.S. 318, 128 L. Ed. 2d 293, 114 S. Ct. 1526 (1994) (per curiam), confirmed this analytical framework. *Stansbury* explained that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id*., at 323, 128 L. Ed. 2d 293, 114 S. Ct. 1526. Courts must examine "all of the circumstances surrounding the interrogation" and determine "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Id*., at 322, 325, 128 L. Ed. 2d 293, 114 S. Ct. 1526 (internal quotation marks and alteration omitted).

8

Finally, in *Thompson v. Keohane*, 516 U.S. 99, 133 L. Ed. 2d 383, 116 S. Ct. 457 (1995), the Court offered the following description of the Miranda custody test: "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." 516 U.S., at 112, 133 L. Ed. 2d 383, 116 S. Ct. 457 (internal quotation marks omitted).

*Alvarado*, 541 U.S. at 662-663.

*Alvarado* involved the interrogation of a juvenile who was brought to a sheriff's station by his parents. *Id.* at 656. Upon arrival, detectives brought Alvarado to a "small interview room" for an interview that "lasted about two hours, and was recorded." *Id.* The Supreme Court held in a 5-4 decision that the state court's application of its clearly established law was reasonable under the deferential standard of § 2254(d)(1), despite acknowledging that "fair-minded jurists could disagree over whether Alvarado was in custody." *Id.* at 664. Certain facts weighed against a finding that Alvarado was in custody: "the police did not transport Alvarado to the station [. . .] they did not threaten him or suggest he would be placed under arrest [. . .] [the detective] appealed to [Alvarado's] interest in telling the truth and being helpful to a police officer [. . .] twice asked Alvarado if he wanted to take a break [. . .] [and] at the end of the interview, Alvarado went home." *Id.* Other facts, however, supported a conclusion Alvarado was in custody, and thus should have been given *Miranda* warnings: the interview occurred "at the police station. The interview lasted two hours, four times longer than the 30-minute

9

interview in *Mathiason*. Unlike the officer in *Mathiason*, [detective] Comstock did not tell Alvarado that he was free to leave." *Id.* at 665.

        The majority in *Alvarado* found it to be a "not difficult" case because "[t]he custody test is general, and the state court's application of our law fits within the matrix of our prior decisions." *Id.* "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 154 L. Ed. 2d 279, 123 S. Ct. 357 (2002) (per curiam). "Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable." *Id. Alvarado* reinforced the dictate that "[t]he *Miranda* custody inquiry is an objective test," and the Ninth Circuit's consideration of Alvarado's youth, inexperience, and lack of prior interactions with law enforcement were impermissible subjective inquiries into the suspect's state of mind that had no place in the objective *Miranda* custody inquiry. *Id.*

        An examination of the facts in this case under the objective *Miranda* custody inquiry does not result in a finding that the state court's decision is objectively unreasonable. While it does not cite *Alvarado,* the state court's decision properly recites the objective *Miranda* custody inquiry:

> However, only a "custodial interrogation triggers the need for a *Miranda* rights warning." *State v. Mason* (1998), 82 Ohio St.3d 144, 153, 1998 Ohio 370, 694 N.E.2d 932; *State v. Gumm* (1995), 73 Ohio St.3d 413, 429, 1995 Ohio 24, 653 N.E.2d 253. "[T]he determination as to whether a custodial interrogation has occurred requires an inquiry into 'how a reasonable man in the suspect's position would have understood his situation.'" *Mason, supra*, at 154 quoting *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317. "In judging whether an individual has been placed into custody the test is whether, under the

10

> totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *Gumm, supra*, at 429, quoting *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497. "The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Mason*, at 154 quoting *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275.

*State v. Ransom*, 2006 Ohio 6490 at *¶ 20.

The Ohio appellate court stated, albeit after citing an Ohio case that recites the elements for determining whether an arrest has occurred, that "[t]here is nothing in the record that would indicate that there was any intent to arrest him, nor that Ransom ever thought himself to have been arrested. Instead, the record reflects that Ransom voluntarily came to and left the Police Department, and a reasonable person would not have understood himself to be under arrest under these circumstances." *Id.* *¶ 22.[4]* While the Ohio appellate court's observations as to the subjective beliefs of Ransom and the officers are supported by the record, *Alvarado* instructs that the analysis must be on objective factors.

Looking at the objective circumstances surrounding the determination of whether a reasonable person in Ransom's shoes would not have felt he was at liberty to leave the station house, the record supports the state appellate court's ultimate conclusion that Ransom was not entitled to *Miranda* warnings at the May 24 interview.

Examining the record, it is clear and undisputed that, like the petitioners in

---

[4] Indeed, as discussed in note 2, *supra*, the police did not consider Ransom a suspect at the time of the interview. Moreover, Ransom himself makes reference to leaving during the interview, supporting the Ohio court's conclusion that Ransom did not subjectively feel restrained. (Doc. No. 8-9 at 257) ("Ransom: You know, I will be home by [. . .]".)

11

*Mathiason* and *Alvarado*, Ransom voluntarily came to the police station. Moreover, while it is somewhat unclear exactly how long Ransom was interviewed,[5] the interview was not excessive in length, and almost certainly shorter than the two hour interview in *Alvarado*. The trial transcript of the interview does not reveal severe or accusatory questioning. Rather, it was Ransom who initiated a shift in the line of questioning from general questions regarding his employment to questions about the victim. (Doc. No. 8-9 at pp. 250-51.) Moreover, as Respondent notes in his brief, the interview transcript indicates that the interview was light-hearted, and at times jocular. (*Id.* at pp. 255-57 (Officers and Ransom laughing and joking about requesting general anesthesia during an awkward and uncomfortable medical examination.).) The fact Ransom was taken to a small interrogation room and the door was shut is materially indistinguishable from *Alvarado*. And like *Alvarado* and *Mathiason*, Ransom left the police station after the interview. Ransom also had access to his cell phone, and indeed used his cell phone, during the interview. (Trial Transcript, Doc. No. 8-9, p. 240 at ¶ 10-15.)

Whether this Court would have reached a different conclusion as to the issue of whether Ransom was in custody at the time of the May 24 interview is irrelevant. This Court is not permitted to substitute its independent judgment for that of the state court, *see Woodford, supra,* but rather is required to determine if the state court's adjudication is either "contrary to" or "involved an unreasonable application of" settled

---

[5] The videotape of the May 24 interview played at trial was slightly redacted ("there may be a couple of spots where the tape jumps and that is because the Court has ruled that there are items that are there that aren't relevant to this case or are inadmissible under the rules of evidence [. . .]"), and was "about an hour in length." (Trial Transcript, Doc. No. 8-9, pp. 211at ¶ 16 – 212 ¶ 2.)

federal law. In this case, Ransom falls well short of presenting sufficient grounds to reach that conclusion. Therefore, this Court **OVERRULES** Ransom's first objection.

B.      **Ground Two  – Ineffective Assistance of Appellate Counsel**

The Magistrate Judge recommended that Ransom's second ground for relief be rejected because Ransom has failed to demonstrate that he was denied the effective assistance of appellate counsel under *Strickland v. Washington*, 466 U.S. 688 (1984). Ransom objects to this determination because, in his view, the Magistrate Judge applied only state law, and not federal law, to the question of deficient performance of appellate counsel. Ransom misconstrues the Magistrate Judge's R&R, which properly applied the controlling federal test for ineffective assistance of counsel as established by *Strickland*.

A petitioner must satisfy both prongs of the *Strickland* test to prove a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). The failure of either prong constitutes a failure of the *Strickland* test. In this case, the Magistrate Judge determined that Ransom was unable to meet the first prong, commonly known as the deficient performance prong, and therefore concluded his inquiry.

Ransom asserts that appellate counsel's performance was deficient because

13

counsel failed to "challenge the holding in *State v. Foster*, 109 Ohio St. 3d 1 (2006) during Ransom's sentencing." (Doc. No. 9 at p. 7.) The Magistrate Judge clearly and comprehensively reviewed a plethora of both state and federal cases that demonstrate that "application of the sentencing law dictated by *Foster* to acts committed prior to that decision is not an ex post facto law or due process violation under the United States or Ohio Constitutions." *State v. Crish*, 2008 Ohio 5196 at *P41 (Ohio Ct. App. Oct. 6, 2008). (Doc. No. 10 at pp. 11-12.)

Quite simply, the failure of appellate counsel to raise an argument that has been summarily rejected as unmeritorious by every court that has considered it is far short of deficient. Therefore, Ransom's second objection is also **OVERRULED**.

IV.     **CONCLUSION**

For all of the foregoing reasons, the Magistrate Judge's Report and Recommendation (Doc. No. 10) is **ACCEPTED**, and the petition for a writ of habeas corpus (Doc. No. 1) is **DENIED**. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fᴇᴅ. R. Aᴘᴘ. P. 22(b).

**IT IS SO ORDERED**.

Dated:  March 11, 2010

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**